[No. 6613. Decided March 26, 1908.]

B. L. MUIR, *Respondent*, v. M. J. JOHNSON, *Appellant*.[1]

NAVIGABLE WATERS—OBSTRUCTIONS—RIGHT TO INJUNCTION—RIPARIAN OR LITTORAL RIGHTS—"SHORE LANDS"—PREFERENCE RIGHTS. A littoral owner on the shore of a navigable lake cannot, by virtue of his riparian or littoral rights, maintain an action for an injunction against the maintainance of piling, boat houses, and permanent fixtures in front of his land, since the state is the owner of the bed of the lake; nor can such action be maintained by virtue of his preference right to purchase "shore lands," where the state has not established harbor lines, and the fixtures are maintained below the line of low water mark, it not appearing whether in water of sufficient depth for ordinary navigation.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 5, 1906, upon findings in

[1]Reported in 94 Pac. 899.

favor of the plaintiff, after a trial on the merits before the court without a jury, granting an injunction to compel the removal of obstructions placed upon a navigable lake and to restrain the placing and maintaining of the same thereon. Reversed.

*Jerold Landon Finch*, for appellant.

*Vince H. Faben*, for respondent.

FULLERTON, J.—The respondent is the owner of lot 1, in block 74, of Burke's Second Addition to the city of Seattle. This block is bounded on the east side by the waters of Lake Washington, or, to speak more accurately, by the meander line run by the government surveyors to mark the line between the waters of the lake and the upland.

The appellant as early as 1889 built a boathouse immediately to the north of lot 1, in block 74, in a street called Jackson street. As originally constructed the boathouse lay partly on the shore and partly over the water, and was wholly within the street. Later on, from time to time, additions were built thereto, extending farther into the lake, and piles were driven still further out in such a manner as to furnish mooring places for boats. In 1902 the appellant caused some thirty piles to be driven in the bed of the lake to the east and south of his boathouse. These were driven in rows of five piles each about 12 feet apart, three rows of which extended across the front of lot 1, in block 74, the inner piling being about 75 feet distant therefrom. These piles he used as a mooring place for scows and launches brought to his shop to be repaired, and some months prior to the commencement of the action, he also moored a floating house boat between the piles and the lakeward boundary of lot 1. This boathouse was thirty feet in length and lay partly in Jackson street and partly in front of lot 1 and within a few feet of the boundary line of the lot; both the house boat and the piles, however, were wholly within the waters of the lake below the line of low water mark.

In this action the respondent sought a mandatory injunction compelling the removal of the house boat and so many of the piles driven in the bed of the lake as stood in front of lot 1, and a preventive injunction to restrain the appellant from placing and maintaining house boats, piles, and other permanent fixtures in front of the lot. In his complaint the respondent rested his right to injunctive relief on the ground that the acts of the appellant amounted to an unlawful interference with his riparian and littoral rights as owner and possessor of lot 1, in block 74. The trial court, adopting this theory, entered judgment in his favor restraining the appellant from maintaining permanent fixtures of any kind in the waters of the lake in front of lot 1, and ordering the house boat and piling now in its front to be removed.

In so far as the judgment of the court rests upon the ground that the structures ordered removed violate the respondent's riparian and littoral rights, it is manifest that it cannot be maintained. As early as the case of *Eisenbach v. Hatfield*, 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632, this court held that the owner of uplands bordering on navigable waters as such had no riparian or littoral rights in such waters as would enable him to maintain an injunction from interference therewith. This holding was based on the ground that between the boundary of the upland and the navigable waters proper there were shore lands which belonged to the state and to which all riparian and littoral rights attached, and the state, or its grantee after it conveyed the lands, had the sole right to complain of obstructions placed between the lands and the navigable waters of the river, lake or other body of water upon which they bordered. And plainly this must be so, for to contend otherwise is to contend that the state does not hold its tide and shore lands by title in fee, as it holds its other lands, but holds them in subordination to such rights as the common law granted an upland owner. But this is not what was meant by the declaration in the state constitution. When the state in that instrument (Const., art. 17, § 1),

asserted "its ownership to the beds and shores of all navigable waters in the state, up to and including the line of ordinary high tide in the waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes," it meant to assert title in fee to such lands, and unless it is to be held that it was without power to reserve to itself such lands, it must be held that the upland owner, merely as such, has no interest therein. On the ground that he is a riparian proprietor, therefore, the respondent cannot maintain injunction to restrain the appellant from occupying the navigable waters of Lake Washington in front of his upland property.

This court, however, has held that the upland owner, in virtue of the fact that the legislature has given him the preference right to purchase the shore and tide lands lying in front of his uplands when such shore and tide lands shall be offered for sale by the state, can maintain injunction to prevent the obstruction of the same by a trespasser, or to remove obstructions placed thereon subsequent to March 26, 1890. *West Coast Imp. Co. v. Winsor*, 8 Wash. 490, 36 Pac. 441. If, therefore, the place where the house boat is moored or the piles are driven can be said to be "shore lands," then the judgment entered can be maintained on the authority of that case. We have examined the record with this thought in view, but are unable to find therefrom that such lands are shore lands. The state has not established harbor lines on this part of the lake nor has the legislature defined such lands other than as "lands bordering on the shores of navigable lakes and rivers below the line of ordinary high water and not subject to tidal flow." Laws 1897, p. 230, ch. 89, § 4. This description, as we said in *Van Siclen v. Muir*, 46 Wash. 38, 89 Pac. 188, is not definite where harbor lines have not been established, since it does not define the water boundary of the lands, and while we held in that case that it would certainly include all lands lying between ordinary high and low water, and might include all land lying between the up-

land and water of sufficient depth for ordinary navigation, the rule does not aid us here, as it appears that the boat is moored and the piles are driven below the line of low water, but whether in water of sufficient depth for ordinary navigation the record is silent.

The judgment appealed from is therefore reversed, and the cause remanded with instructions to enter a decree to the effect that the respondent take nothing by his action, and that the appellant recover his costs.

HADLEY, C. J., MOUNT, and CROW, JJ., concur.